**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **LARRY S. HOFFSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No. 4:23-CV-448 PLC** |
| | ) |
| **MARTIN O'MALLEY[1],** | ) |
| **Commissioner of Social Security.** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM AND ORDER**

Plaintiff Larry Hoffson seeks review of the decision of Defendant Social Security Commissioner Martin O'Malley, denying his applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and Supplemental Security Income (SSI) under Title XVI. Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's applications.

**I.      Background**

On July 29, 2019, Plaintiff filed applications for DIB and SSI, alleging he was disabled as of June 18, 2019 due to two degenerative discs, constant numbness and pain in his body and appendages, and lower back pain.  (Tr. 134, 216-217, 232-238)   The Social Security Administration (SSA) denied Plaintiff's claims in November 2019, and he filed a timely request for a hearing before an administrative law judge (ALJ).  (Tr. 154-155, 164-165)  The SSA granted Plaintiff's request for review and conducted a hearing in October 2020.  (Tr. 106-133)

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the Defendant in this suit.  *See* 42 U.S.C. § 405(g).

Plaintiff, born January 25, 1969, testified during the first hearing before the ALJ that he lived in a house with his girlfriend and dogs. (Tr. 112-113)  He completed several years of college, but did not obtain a degree.  (Tr. 112)

With respect to his abilities and activities, Plaintiff testified that he was able to feed his dogs, but did not take them for walks.  (Tr. 113)  Plaintiff laundered his clothes in small loads (because heavy lifting was difficult), and his girlfriend folded the clothes.  (Tr. 113-114)  Plaintiff stated that he helped with the dishes "periodically throughout the day", because the repetitive nature of the task as well as standing precluded completion in one session.  (Tr. 114-115)  Plaintiff testified that he was no longer able to type, because the numbness in his hands prevented him from feeling the keys.  (Tr. 115)

Plaintiff asserted that due to issues with his right knee and lower back, he was able to stand for only ten to fifteen minutes before needing to sit down or switch positions.  (Tr. 117)  He stated that he was able to shower and get dressed on his own "with some creativity."  (Tr. 118)

A vocational expert testified at the October, 2020 hearing.  (Tr. 122-132)  He classified Plaintiff's past relevant work, and responded to a series of hypotheticals regarding job opportunities for an individual with Plaintiff's qualifications and alleged limitations.  (*Id.*)

In a decision dated November 27, 2020, the ALJ applied the five-step evaluation set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a) and found that Plaintiff:  (1) had not engaged in substantial gainful activity since June 18, 2019, the alleged onset date; and (2) had the severe impairments of degenerative disc disease and osteoarthritis in the cervical spine, status post-fusion; bilateral carpal tunnel syndrome; and degenerative joint disease in the right knee, that significantly limited his ability to perform basic work activities as required by SSR 85-28.  (Tr. 17-18)  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments

that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 19)  As support, the ALJ recounted in detail the nature of Plaintiff's medical history.  (Tr. 19-21)  He further evaluated the medical opinions and prior administrative medical findings in the record.  (Tr. 20-22)

After "careful consideration of the entire record", the ALJ determined that Plaintiff had the RFC to perform light work, except that:

> he can lift up to 10 pounds occasionally and 10 pounds frequently[2]; can stand and/or walk about 6 hours out of an 8 hour workday, with normal breaks; can sit for about 6 hours out of an 8 hour workday, with normal breaks, except:  the claimant can occasionally reach overhead on the right and frequently reach in all other directions; can frequently handle and finger bilaterally;  cannot claim ladders, ropes, or scaffolds or crawl; can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; and should avoid concentrated exposure to excessive vibration.

(Tr. 19)  Based on the vocational expert's testimony, the ALJ found that Plaintiff maintained the ability to perform past relevant work as a customer service representative.  (Tr. 22)  The ALJ further found Plaintiff maintained the RFC to perform jobs that existed in significant numbers in the national economy, such as bench assembler, mail clerk, and office clerk. (Tr. 23-24)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 18, 2019 through the date of the decision.  (Tr. 24)

---

[2] The Court recognizes the inconsistency in the ALJ's lifting limitations.

After the SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 3-9), Plaintiff filed a Complaint for Judicial Review of Decision of the Commissioner of Social Security with this Court on May 28, 2021.  (Case No. 4:21CV626 PLC, ECF No. 1).  Plaintiff argued the ALJ erred by misclassifying Plaintiff's past work, and by listing possible job opportunities that were not supported by substantial evidence due to a lack of reliable basis for the vocational expert's testimony.  (*Id.*, ECF No. 16).  On January 19, 2022, Defendant filed a Motion to Reverse and Remand, stating "agency counsel determined that remand was necessary for further evaluation of Plaintiff's claim."  (*Id.*, ECF No. 23).[3]  In an opinion issued January 24, 2022, this Court granted the Commissioner's unopposed motion to reverse and remand.  (*Id.*, ECF Nos. 25, 26).

In an Order entered March 22, 2022, the SSA Appeals Council vacated the hearing decision, and remanded Plaintiff's case to the ALJ for resolution of the following issues:

- The finding in the decision that the claimant can return to past work as a customer service representative is not supported by substantial evidence because the record does not support that the claimant's past work matches that occupation (Decision, pages 8-9).  At the hearing, the vocational expert initially testified that one of the claimant's past jobs was as a customer service representative (DOT #299.357-014).  However, during cross-examination, the Administrative Law Judge notes that the job described by the claimant on page 5 of Exhibit 6E did not match the customer service representative occupation (Transcript of Oral Hearing, page 24).  Additionally, the vocational expert confirmed that the job described by the claimant would not equate to a customer service representative position, and the Administrative Law Judge then confirmed that there was no customer service representative position in the claimant's past work (Transcript of Oral Hearing, pages 24-25).  However, the Administrative Law Judge erroneously states in the

---

[3] Agency counsel suggested that on remand, the Commissioner was to "issue a new decision that properly evaluates the claimant's ability to perform past relevant work and whether other work exists in significant numbers in the national economy that the claimant can still perform."  (Case No. 4:21CV626 PLC, ECF No. 23, P. 1).

decision that the claimant's past work described on page 5 of Exhibit 6E was identified by the vocational expert as customer service representative work (page 8). Therefore, additional consideration of the claimant's ability to perform past relevant work at step four of the sequential evaluation process is warranted.

- There is an apparent conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* (DOT), which was not resolved as required by SSR 00-4p. In the residual functional capacity determination, the Administrative Law Judge found the claimant could only occasionally perform overhead reaching with his right arm (Decision, page 5). In response to a hypothetical question that included this limitation, the vocational expert responded that the claimant could perform work as a bench assembler (DOT #706.684-022), mail clerk (DOT #209.687-026), and office clerk (DOT #209.667-014) (Decision, page 10 and Transcript of Oral Hearing, pages 19-22). The Administrative Law Judge acknowledges in the decision that all three jobs are defined by the DOT as requiring frequent reaching (pages 9-10). At the hearing, the Administrative Law Judge asked the vocational expert if his testimony was consistent with the DOT, and the expert stated that, except for limitations related to being off task, extra break periods, and absenteeism, it was (Transcript of Oral Hearing, page 25). At the hearing, neither the Administrative Law Judge nor the vocational expert identified the conflict between the restriction to only occasional overhead reaching in the hypothetical question and the requirement of at least frequent reaching in the jobs cited by the vocational expert (Transcript of Oral Hearing, pages 19-25). While the decision contains a statement that the DOT indicates frequent reaching for all of the jobs, and that nothing in the job description indicates that frequent overhead reaching would actually be required (page 10), the Administrative Law Judge does not elicit an explanation of the conflict from the vocational expert. Therefore, the conflict was not resolved as required by SSR 00-4p and further evaluation is warranted.

(Tr. 646-647)  The SSA Appeals Council directed that upon remand, the ALJ should:

- Give further consideration to whether the claimant has past relevant work and, if so, can perform it (20 CFR 404.1560(a)-(b) and 416.960(a)-(b)). Obtain supplemental vocational expert evidence to assist in evaluating whether the claimant can perform past relevant work.

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-12). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 647)[4]

The SSA conducted a second hearing in October 2022. (Tr. 594-631) Plaintiff testified that he currently lived with his girlfriend and her mother. (Tr. 610) Plaintiff stated he was able to perform neither yard work nor laundry. (*Id.*) Plaintiff explained that since his carpal tunnel release surgeries in November 2020 and November 2021, the "numbness as far as tingling" with his hands had mostly subsided, but if he engaged in repetitive behaviors, his hands would start shaking and cramping. (Tr. 612) Plaintiff stated that he rarely tried to open jars, could not utilize zippers because he could not feel the correct positioning, and frequently dropped items. (Tr. 613) He said he was able to wash his hair with difficulty, cook using only the microwave, and load and unload the dishwasher on occasion. (Tr. 613-614, 617) Plaintiff stated he could no longer type, as his fingers tensed and did not react. (Tr. 613) He further characterized the pain in his neck as "[l]ike wearing shoulder pads, iron maiden shoulder pads." (*Id.*) Plaintiff claimed he could use his hands for ten to thirteen minutes, before having to stop due to discomfort. (Tr. 620)

---

[4] The SSA Appeals Council noted that Plaintiff filed subsequent claims for Title II and Title XVI disability benefits on May 4, 2021. (Tr. 647) The Council directed the ALJ to consolidate the claims files, combine the evidence, and issue a new decision on the consolidated claims. (*Id.*)

Plaintiff testified that he was currently utilizing a cane, although not in his home, and no longer used a knee brace. (Tr. 611)  Plaintiff estimated that since the surgery on his knee in August 2022, he was able to walk between two and four blocks. (*Id.*)  He stated he could sit for approximately thirty minutes, but was "basically in bed all day." (Tr. 612)  He noted that after engaging in activities such as caring for his dogs or his girlfriend's mother, he was "done." (Tr. 615)[5]

Upon questioning from the ALJ, Plaintiff testified that he took Hydrocodone for pain, and Baclofen as a muscle relaxant. (Tr. 615-616)  He said he had engaged in physical therapy on his knee for a couple of weeks, but then his doctor said everything was "looking good for what it was and just do not go crazy." (Tr. 616)  Plaintiff had a home exercise program for both his shoulders and his knee, but his doctor had not imposed any restrictions on Plaintiff's daily activities. (*Id.*)

A vocational expert testified at the second hearing. (Tr. 620-630)  The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, education, and work experience, with the following limitations:

> [A] person….who is limited to light work except lifting up to 10 pounds occasionally and negligible amounts of weight frequently, sit, walk or stand for up to six hours in an eight hour work day with normal breaks, never climb ladders, ropes or scaffolds or crawl, occasionally climb ramps, stairs, balance, stoop, kneel, crouch, occasionally overhead reach on the right, frequently reach in other directions on the right—actually amend that to occasional overhead reaching bilaterally.  And then frequent reaching in other directions bilaterally.  Frequent handling and fingering bilaterally, avoid concentrated exposure to excessive vibration, avoid all exposure to unprotected heights.

(Tr. 624)  The vocational expert stated that although such an individual would not be able to perform any of Plaintiff's past work, there existed jobs at the semiskilled or skilled level in the

---

[5] Plaintiff claimed that when faced with such an activity, he would not do anything the day before or the day after. (Tr. 615)

national economy that he could perform, such as order clerk, advertising clerk, and classified ad clerk.[6]  (Tr. 624-625)  Upon questioning, the vocational expert clarified that while the reaching, handling and fingering requirements for the jobs were frequent, there was no discrepancy with the hypothetical because the reaching was not overhead.  (Tr. 625-626)  When the ALJ changed the hypothetical to limit the individual to work at the sedentary level, the vocational expert stated the three listed jobs would still be available.  (Tr. 626)  The vocational expert acknowledged that should the hypothetical individual be limited to occasional reaching, handling and/or fingering, the jobs would no longer be available.  (*Id.*)

When the ALJ changed the hypothetical to involve only simple and routine tasks, thus eliminating semiskilled work, but incorporating a light activity level, the vocational expert stated the individual could work as a cafeteria attendant, coffee machine operator and bus monitor.  (Tr. 627-628)[7]  Finally, the vocational expert opined that two or more unexcused or unscheduled absences in any month was likely to result in termination; that tolerance for unscheduled breaks was "very little"; and that outside of allowable breaks,  employers typically expect employees to be on-task at least 80% of the time.  (Tr. 626-627, 629)

In a decision dated January 20, 2023, the ALJ applied the five-step evaluation set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a) and found that Plaintiff:  (1) had not engaged in substantial gainful activity since June 18, 2019, the alleged onset date; and (2) had the severe impairments of degenerative disc disease and osteoarthritis of the cervical spine with anterior cervical diskectomy and fusion at C4-C6; bilateral carpal tunnel syndrome; right knee degenerative joint disease and osteoarthritis with arthroplasty; and bilateral degenerative joint disease of the

---

[6] The vocational expert noted that all of his proposed jobs were classified as sedentary.  (Tr. 625)
[7] The vocational expert stated that an individual who had to utilize a cane while ambulating would not be able to perform the light jobs.  (Tr. 628)

hips, that significantly limited his ability to perform basic work activities as required by SSR 85-28. (Tr. 574)[8]  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 575-576)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 578)  With respect to Plaintiff's ability to utilize his hands, the ALJ found as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are not fully supported because they are not entirely consistent with his recovery following his cervical and carpal tunnel surgeries, [and] his conservative course of treatment thereafter…Nor [are they] support[ed] by the unremarkable findings with regard to his upper extremities, manipulative abilities, or his reported activities, including his ability [to] care for himself and assist with activities of daily living….As such the treatment records suggest his impairments are not as severe as alleged and his daily activities are not as restricted as he contends.

(*Id.*)

The ALJ considered the medical opinions in the record, and as relevant here found that Dr. Peter Ireland's January 2020 opinion was "not entirely persuasive", as follows:

> [Dr. Ireland] indicated the claimant could only occasionally lift up to 25 pounds and could not frequently lift even a nominal weight, which is an understatement of claimant's functional capacity based the record.  For instance, the claimant reported he was able to prepare simple meals, wash laundry, shop, and perform other tasks that involve lifting lighter weights regularly (*See*, 7E).  Notably, Dr. Ireland did assess the claimant with a limitation with use of the right hand, but also that the claimant could frequently reach above the head (8F/2)…. To be sure, the claimant has

---

[8] The ALJ found Plaintiff's major depressive disorder was nonsevere, as it did not cause more than minimal limitation in his ability to perform basic mental work activities. (Tr. 574)

reported neck and arm symptoms which can be reasonably [be] expected to limit his ability to lift, carry, handle and finger; however, nothing suggests pain or weakness consistent with an inability to lift no more than 10 pounds at any one time and only occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Similarly, claimant's pain complaints and subjective statements do not appear to be consistent with the assessment….

This opinion indicates the claimant remains capable of work at the light exertional level[9], with frequent limitations on climbing, balancing, and stooping.  The undersigned notes that the record supports a limitation to sedentary work.  However, the claimant's exam findings and impairments do support greater postural limitations, as well as manipulative and environmental limitations.  Thus, this opinion is not persuasive.

(Tr. 581)  The ALJ addressed Dr. Jacob Lanter's August 2020 opinion in relevant part as follows:

This opinion describes extreme limitations.  This includes an inability to sit for more than two hours, stand or walk for more than an hour each, or ever lift any amount at all.  The sitting, standing and walking limitations are within the sedentary work demand when normal breaks are considered.  However, this opinion indicates the claimant could never do those activities the claimant states he can perform….

(Tr. 582)

The ALJ found the opinions of the State agency medical consultants, Dr. Dennis McGraw and Dr. Steven Fishburn, mostly persuasive, as follows[10]:

Dr. McGraw and Dr. Fishburn determined the claimant capable of light work with occasional balancing, kneeling, crouching, and climbing ramps and stairs and never crawling or climbing ladders, ropes, or scaffolds[,] with manipulative limitations on reaching, reaching overhead, handling, fingering, and feeling[,] as well as exposure to vibration and hazards.  Aside from the restriction to light work, the undersigned finds Dr. McGraw's and Dr. Fishburn's determinations persuasive because they are specialists in their respective fields with knowledge and understanding applying Social Security rules and regulations.  Moreover, they had the opportunity to support their findings with the updated medical evidence which they cited including his reports of significant improvement following carpal tunnel syndrome release surgery and his ability to drive, text, play board games and socialize with others.  However, as noted above, following the

---

[9] Dr. Ireland did not state that Plaintiff was capable of light work in his report.

[10] Dr. McGraw and Dr. Fishburn provided administrative findings based on their reviews of the record through August 2021 and July 2022, respectively.  (Tr. 582)

> claimant's right knee surgery, the record shows he has made progress. Nevertheless, the undersigned finds a sedentary work capacity best accommodates the claimant's limitations in this respect.

(Tr. 582)

The ALJ concluded as follows:

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the claimant's response to carpal tunnel surgeries and his recent knee surgery with indications by his orthopedist and primary care provider that he was healing well without concerns warranting changes in care, restrictions, or an ongoing need for an assistive device.  It is also supported by his ability to manage symptoms of pain with medication as well as his ability to engage in activities as detailed above.

(Tr. 583)

After "careful consideration of the entire record", the ALJ determined that Plaintiff had the RFC to perform sedentary work, except that

> he can occasionally balance, kneel, crouch, and climb ramps and stairs but never crawl or climb ladders, ropes, or scaffolds.  He can occasionally reach overhead bilaterally and can reach in all other directions frequently.  The claimant can frequently handle and finger bilaterally.  He must avoid concentrated exposure to excessive vibration and all exposure to unprotected heights.

(Tr. 577)  Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy, such as order clerk, advertising clerk, and classified advertising clerk.  (Tr. 584)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 18, 2019, through the date of the decision.  (*Id.*)

In cases that are remanded by a federal court, the decision of the ALJ becomes the final decision of the Commissioner unless the Appeals Council assumes jurisdiction.  *See* 20 C.F.R. §§ 404.984, 416.1484.  The Appeals Council did not assume jurisdiction in this case.  Therefore,

11

Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II.    Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).  At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611.  At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement

in § [404.1509 or 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *McCoy*, 648 F.3d at 611.  To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings").  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611.  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process.  20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).  At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611.  If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611.  At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an

adjustment to other work, the claimant will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523.  At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform.  *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1520(g), 416.920(g).

### III.    Discussion

Plaintiff claims the ALJ erred in determining his RFC, because substantial evidence did not exist in the record to support the RFC determination.  (ECF No. 16)  Specifically, Plaintiff claims substantial evidence did not support the ALJ's RFC assessment, as the evidence showed that he can handle and finger only occasionally, not frequently, secondary to nerve damage, status-post anterior cervical diskectomy and fusion at C4-6, severe degenerative disk disease at C6-7, and cervical radiculopathy.  (*Id.*, P. 4)  The Commissioner counters that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff is not disabled.  (ECF No. 19)

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'"  *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome."  *Id.* (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B. Consideration of Medical Opinion Evidence

Plaintiff filed his applications for benefits after March 27, 2017. Accordingly, the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. §§ 404.1520c and 416.920c. Under these regulations, an ALJ considers all medical opinions equally and evaluates their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An ALJ must "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [he] considered the supportability and consistency factors . . . in [the] determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[11] An ALJ's failure to address either the consistency

---

[11] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative

or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucas v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)). *See also Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021). An ALJ need not explain in his or her decision how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

1. The ALJ Properly Rejected Dr. Ireland's Opinion

On January 31, 2020 Dr. Peter Ireland, Plaintiff's treating neurosurgeon, completed a Physical Medical Source Statement. (Tr. 446-449) In his opinion, Dr. Ireland provided the following diagnosis for Plaintiff: "Right upper extremity nerve damage due to cervical spinal compression/crush circa C2-C3, [status post] neurosurgical fix, with residual neurological deficits." (Tr. 446) He stated that Plaintiff had exertional limitations as follows: lift and/or carry up to 25 pounds occasionally[12] but never 50+ pounds; reach overhead frequently[13]; and stoop continuously[14]. (Tr. 447) Dr. Ireland opined that Plaintiff had no sitting, standing, walking, or balancing limitations, but had significant limitation of the ability to manipulate small objects with his right hand. (Tr. 446-447) Dr. Ireland noted Plaintiff had medically determinable impairments that could be expected to produce pain, as follows: "right arm muscle wasting 2/2 nerve damage;

---

medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

"Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[12] "Occasionally" is defined as "up to 1/3 of the day (1-2 hours)." (Tr. 447)

[13] "Frequently" is defined as "1/3 to 2/3 of the day (3-5 hours)." (Tr. 447)

[14] "Continuously" is defined as "2/3 of the day to all day (6-8 hours). (Tr. 447)

right hand clumsiness; residual nerve damage." (Tr. 448)[15]   He stated Plaintiff's pain would

preclude persisting or focusing on simple tasks during a sustained full-time work schedule, as

Plaintiff would need to both miss work and leave work early three or more times per month, and

take more than 3 breaks and/or naps during a normal 8-hour workday.  (Tr. 448-449)

As noted above, in his written decision the ALJ found Dr. Ireland's opinion that Plaintiff

could not frequently lift even a nominal weight was an understatement of Plaintiff's functional

capacity, as Plaintiff "reported he was able to prepare simple meals, wash laundry, shop, and

perform other tasks that involve lifting lighter weights regularly (*See*, 7E)."  (Tr. 581)   With

respect to Plaintiff's manipulative abilities, the ALJ noted that Dr. Ireland assessed Plaintiff with

a limitation of use of his right hand, but continued to state Plaintiff could frequently reach above

his head.  (*Id.*)  The ALJ concluded that although Plaintiff "has reported neck and arm symptoms

which can reasonably [be] expected to limit his ability to lift, carry, handle and finger", nothing in

the record suggested pain or weakness consistent with an inability to lift more than 10 pounds at

any one time, or only occasionally lift or carry small items such as docket files, ledgers and small

tools.  (*Id.*)

Plaintiff    contends    the    ALJ    erred    in    discounting    Dr.    Ireland's    opinion,

as his conclusions are persuasive and support a finding of disability.  "Once the ALJ has decided

how much weight to give a medical opinion, the Court's role is limited to reviewing whether

substantial evidence supports this determination, not deciding whether the evidence supports the

plaintiff's view of the evidence."  *Beamer v. Saul*, No. 2:18-CV-00094 JAR, 2020 WL 1511350,

---

[15] Dr. Ireland marked Plaintiff's objective indications of pain as including muscle atrophy, sensory disruption and motor disruption, and his subjective indications as complaints of pain and sleeplessness.  (Tr. 448)

at *7 (E.D. Mo. Mar. 30, 2020) (citation omitted).  *See also Couch v. Berryhill*, No. 2:18 CV 46 DDN, 2019 WL 1992623, at *6 (E.D. Mo. May 6, 2019) (same).

As noted above, Dr. Ireland completed his Medical Source Statement in January 2020.  Dr. Ireland thus rendered his opinion with respect to Plaintiff's manipulative limitations prior to Plaintiff undergoing carpal tunnel release surgeries on both sides.  The record contains evidence that Plaintiff's abilities were greatly improved after the surgeries.  For example, on November 13, 2020, Plaintiff's treating carpal tunnel release surgeon, Dr. Lauren Wessel, reported that Plaintiff was doing well nine days post-surgery.  (Tr. 991)  On June 11, 2021, Dr. Nishant Dwivedi of the Barnes Jewish Hospital Center's Specialty Care Clinic Hand and Wrist noted as follows:

> [Plaintiff] underwent right carpal tunnel release on 11/04/2020.  He reports that his right carpal tunnel release significantly improved his right hand subjective numbness and painful paresthesias.  He now very rarely experiences tingling paresthesias in his right thumb and index finger.  He is very happy with his outcome on the right side.

(Tr. 978)  Dr. Dwivedi further stated that on Plaintiff's right side, there was "excellent elbow, forearm, wrist and hand motion", and "[n]egative Tinel's and Durkan's over the carpal tunnel, Guyon's canal, lacertus, and ulnar nerve at the cubital tunnel[.]"  (*Id.*)  Finally, in a December 15, 2021 note, Dr. Lanter noted that Plaintiff was recovering well since his left hand carpal tunnel release surgery, the overall pain in his hand had decreased, and he was working on his grip strength.  (Tr. 1683)

Upon consideration of the foregoing, the Court holds that substantial evidence supports the ALJ's decision to reject Dr. Ireland's opinion with respect to Plaintiff's manipulative capabilities.  Although Plaintiff is correct that there are medical records showing lingering concerns following Plaintiff's diskectomy, this Court's review is limited to determining whether

18

the ALJ's findings are based on correct legal standards and supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). As long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). *See also Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (internal quotation marks and citation omitted) (An ALJ's decision is not to be disturbed "so long as the ... decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact."). Here the ALJ's decision, and, therefore, the Commissioner's, was within the "zone of choice". *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017). The Court therefore finds that the ALJ did not err in his consideration of Dr. Ireland's opinion in determining whether Plaintiff was disabled.

2. The ALJ Properly Rejected Dr. Lanter's Opinion

On September 15, 2020, Dr. Jacob Lanter, Plaintiff's treating primary care physician, completed a Physical Medical Source Statement. (Tr. 562-567) In his opinion, Dr. Lanter provided the following diagnoses for Plaintiff: "primary osteoarthritis, R. knee; arthropathy shoulder region, R; carpal tunnel syndrome; lumbago with sciatica; peripheral neuropathy; spondylosis with radiculopathy, cervical region, status-post C4-C6 diskectomy with fusion, Aug. 2019; radial styloid tenosynovitis." (Tr. 562) He stated that Plaintiff had exertional limitations as follows: sit for 2 hours in an 8 hour workday, but stand and walk for 1 hour or less; never lift or carry any amount of weight, or reach in any direction, including overhead; and occasionally stoop.

19

(Tr. 562-563, 566-567)  Dr. Lanter opined that Plaintiff had significant manipulative limitation of the ability to handle and work with small objects with both hands.  (Tr. 563)  Dr. Lanter noted Plaintiff had medically determinable impairments that could be expected to produce pain, as follows:  right knee osteoarthritis; right shoulder arthropathy; peripheral neuropathy; and carpal tunnel syndrome.  (Tr. 564)[16]  Finally, he stated Plaintiff's pain would preclude persisting or focusing on simple tasks during a sustained full-time work schedule, as Plaintiff would need to both miss work and leave work early three or more times per month, and take more than 3 breaks during a normal 8-hour workday.  (Tr. 564-565)

As noted above, in his written decision the ALJ discounted Dr. Lanter's opinion in relevant part as follows:

> This opinion describes extreme limitations.  This includes an inability to sit for more than two hours, stand or walk for more than an hour each, or ever lift any amount at all.  The sitting, standing and walking limitations are within the sedentary work demand when normal breaks are considered.  However, this opinion indicates the claimant could never do those activities the claimant states he can perform.

(Tr. 582)

Plaintiff contends that the ALJ erred in discounting Dr. Lanter's opinion, as the opinion is persuasive and supports a finding of disability.  Again, "[o]nce the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence."  *Beamer*, 2020 WL at 1511350, at *7 (citation omitted); *Couch*, 2019 WL 1992623, at *6 (same).

---

[16] Dr. Lanter marked Plaintiff's objective indications of pain as including muscle atrophy, muscle spasm, reduced range of motion, and sensory disruption, and his subjective indications as complaints of pain, weight loss or gain, sleeplessness, irritability, and grimaces.  (Tr. 564)

As noted above, Dr. Lanter completed his Medical Source Statement in September 2020, a date prior to Plaintiff undergoing carpal tunnel release surgeries on both sides. The ALJ had before him medical evidence from after the first surgery, indicating that Plaintiff was healing well and experiencing relief. (Tr. 991, 978) The ALJ further had Dr. Lanter's own December 15, 2021 notation, noting that Plaintiff was recovering since his second carpal tunnel release surgery, the overall pain in his left hand had decreased, and he was working on his grip strength. (Tr. 1683) Finally, the ALJ correctly noted that Dr. Lanter's restrictions did not comport with Plaintiff's own account of his capabilities, as described through his adult function reports and his hearing testimony. (Tr. 582)

Upon consideration, the Court finds that substantial evidence supports the ALJ's decision to reject Dr. Lanter's conclusion with respect to Plaintiff's manipulative capabilities, as he did with Dr. Ireland's opinion. *See Haley*, 258 F.3d at 747 (holding as long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently). The Court therefore finds that the ALJ did not err in his consideration of Dr. Lanter's opinion in determining whether Plaintiff was disabled.

3. The ALJ Properly Credited Dr. McGraw's and Dr. Fishburn's Opinions

On July 27, 2022, Dr. Steven Fishburn, a non-examining physician, reviewed certain evidence and completed a Physical Residual Functional Capacity Assessment. (Tr. 670-678)[17] In his opinion, Dr. Fishburn found that for the period November 28, 2020 to the present, Plaintiff had

---

[17] Non-examining physician Dr. Dennis McGraw completed the same assessment on August 23, 2021. (Tr. 653-660) Because Drs. McGraw and Fishburn reached identical conclusions, the Court addresses the assessments together. Further, although the Court's analysis applies to both opinions, for ease of reference the Court refers only to Dr. Fishburn's assessment in its discussion.

the following medically determinable impairments: osteoarthrosis and allied disorders, and carpal tunnel syndrome. (Tr. 672, 674) He stated that Plaintiff had exertional limitations as follows: lift and/or carry 10 pounds frequently and 20 pounds occasionally; push and/or pull in upper extremities "Limited beyond lift and/or carry"[18]; and push and/or pull in lower extremities "Unlimited, other than lift and/or carry". (Tr. 674) Dr. Fishburn opined that Plaintiff was limited to frequent use of his hands, with the exception of using his right hand to reach overhead, which should be attempted only occasionally. (Tr. 675) Dr. Fishburn concluded that Plaintiff demonstrated the maximum sustained work capability for light exertional work. (Tr. 678)

As noted above, in his written decision the ALJ found the opinions of the State agency medical consultants mostly persuasive, as follows:

> Dr. McGraw and Dr. Fishburn determined the claimant capable of light work….with manipulative limitations on reaching, reaching overhead, handling, fingering, and feeling….Aside from the restriction to light work, the undersigned finds Dr. McGraw's and Dr. Fishburn's determinations persuasive because they are specialists in their respective fields with knowledge and understanding applying Social Security rules and regulations. Moreover, they had the opportunity to support their findings with the updated medical evidence which they cited including his reports of significant improvement following carpal tunnel syndrome release surgery and his ability to drive, text, play board games and socialize with others.[19]

(Tr. 582)

Upon consideration, the Court finds that substantial evidence supports the ALJ's decision to credit Dr. Fishburn's conclusion with respect to Plaintiff's manipulative capabilities. Unlike Dr. Ireland and Dr. Lanter, Dr. Fishburn had the benefit of reviewing Plaintiff's updated medical

---

[18] Dr. Fishburn clarified that Plaintiff was able to push/pull with his upper extremities on an occasional basis. (Tr. 674)

[19] The ALJ disagreed with Drs. McGraw and Fishburn in one respect. Due to Plaintiff's recent right knee surgery, the ALJ found a sedentary work classification best accommodated Plaintiff's limitations. (Tr. 582)

records following his carpal tunnel release surgeries prior to rendering his opinion.  (Tr. 675-677)  Accordingly, at the time of the hearing in October 2022, the record as a whole supported the ALJ's favorable consideration of Dr. Fishburn's opinion evidence.

It is important to note that the ALJ did not rely on Dr. Fishburn's opinion exclusively to support his finding of non-disability.  A review of the ALJ's decision shows that he reached his conclusion after considering and weighing all the relevant evidence of record, as required.  When taken together with the record as a whole, a non-examining consultant's medical opinion may be considered when forming the basis of an ALJ's opinion.  *See Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) ("[T]he ALJ in this case did not rely solely on [the non-examining consultant's] opinion to reach his conclusions.  Rather, the ALJ relied on [the consultant's] opinion as one part of the record, which, as a whole . . . provides substantial support for his findings."); SSR 96-6P, 1996 WL 374180, at *1-3 (Soc. Sec. Admin. July 2, 1996) (an ALJ must treat expert opinion evidence of non-examining providers in conjunction with the other evidence of record).

The ALJ did not err in his consideration of Dr. McGraw's and Dr. Fishburn's opinions in determining whether Plaintiff was disabled.

C.  RFC Determination

Plaintiff asserts the RFC is not supported by substantial evidence.  Specifically, Plaintiff claims the ALJ erred because the evidence showed that Plaintiff can handle and finger only occasionally, not frequently, secondary to nerve damage, status-post anterior cervical diskectomy and fusion at C4-6, severe degenerative disk disease at C6-7, and cervical radiculopathy.

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ should determine a claimant's RFC based on all relevant evidence

including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted). An ALJ "is not limited to considering medical evidence exclusively," as even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citations omitted). While the Court recognizes that an ALJ "may not draw upon [his] own inferences from medical reports," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

As discussed above, the ALJ did not simply substitute his interpretation for Dr. Ireland's and Dr. Lanter's, but instead supported his conclusion that the opinions were not persuasive with specific citations to the record. The ALJ properly credited the opinions of Dr. McGraw and Dr. Fishburn, and incorporated the doctors' posited limitations (and more) into both the hypothetical he posed to the vocational expert and the RFC he constructed. The ALJ further properly considered Plaintiff's subjective reports. In sum, the ALJ did not err in formulating Plaintiff's RFC and determining whether Plaintiff is disabled.

## IV.     Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 18, 2019, through the date of this decision[.]"  (Tr. 584)

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of June, 2024.